

**IT IS ORDERED as set forth below:**


**Date: September 28, 2017**

_Wendy L. Hagenau_
_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 15-53700-WLH |
| | ) | |
| BRENDA KAY ROBERTSON, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| —————————————————— | ) | |
| | ) | |
| RES-GA DIAMOND MEADOWS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. PROC. NO. 15-05436 |
| | ) | |
| BRENDA KAY ROBERTSON, | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

**<u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

This adversary proceeding under Sections 727 and 523 of the Bankruptcy Code comes

before the Court on Plaintiff RES-GA Diamond Meadows, LLC's Motion for Summary

Judgment [Docket No. 78] and Defendant Brenda Kay Robertson's Motion for Summary

Judgment [Docket No. 76]. The adversary proceeding objects to the Defendant's discharge and

to the dischargeability of Plaintiff's claims on numerous grounds. The cross-motions for summary judgment touch on most, but not all, of the grounds alleged in the Complaint. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) & (J), and the Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

## UNDISPUTED FACTS

Brenda K. Robertson's ("Robertson" or "Defendant") history with Plaintiff's claim began on February 3, 2006, when she guaranteed a promissory note made by HBC Communities, LLC ("HBC") to FirstCity Bank in the amount of $4,162,500 ("FirstCity Loan"). In connection with the FirstCity Loan, Robertson signed a document titled "Agreement to Provide Financial Information" dated March 27, 2008; the parties dispute Robertson's obligations under this document. The FirstCity Loan had an original maturity date of February 5, 2007. The maturity date was extended three times, with the final maturity date being March 1, 2009. FirstCity Bank was eventually placed into receivership by the FDIC, and on February 9, 2010 the FDIC assigned the loan documents (and all rights thereunder) to Multibank 2009-1 RES-ADC Venture, LLC ("Multibank"). In April 2010, while Multibank held the loan, Robertson provided Multibank with a financial disclosure statement that Plaintiff alleges omitted material financial information. On February 17, 2011 Multibank assigned the loan to Plaintiff RES-GA Diamond Meadows, LLC ("RGDM" or "Plaintiff"). Multibank is the sole member of RGDM. On August 28, 2012, RGDM filed a complaint against Robertson in the superior court of Clayton County. Judgment was subsequently entered in RGDM's favor and against Robertson on May 13, 2014, in the amount of $5,489,997, plus post-judgment interest ("RGDM Judgment"). RGDM initiated garnishment proceedings in January 2015 seeking to collect on the RGDM Judgment. The garnishment prompted Robertson to file this bankruptcy case on February 27, 2015.

2

RGDM's adversary proceeding is based in large part on numerous transfers made by Robertson.  In May 2009, prior to RGDM becoming the holder of the FirstCity Loan, Robertson created four limited liability companies in Georgia: Woodmond Ventures, LLC ("Woodmond"), Gilbert Ventures, LLC ("Gilbert"), Mykassi Ventures, LLC ("Mykassi") and Bice Ventures, LLC ("Bice") (collectively, "Robertson LLCs").  Approximately one month later, on June 3, 2009, Robertson transferred certain real property identified below ("Transferred Properties")[1] that Robertson owned individually to the Robertson LLCs.  The property transfers included the following[2]:

| Recipient Entity | Transferred Property Address |
| --- | --- |
| Woodmond Ventures, LLC | 171 Bay Court, Stockbridge, GA |
| | 7966 Wright Circle, Jonesboro, GA |
| | 7958 Wright Circle, Jonesboro, GA |
| | 3265 Walt Stevens Rd., Jonesboro, GA |
| Mykassi Ventures, LLC | 196 Hemlock Dr., Clarkesville, GA |
| | 8.736 acres, Highway 197, Habersham County, GA |
| Gilbert Ventures, LLC | Lots 1-7, Boulder Estates, Clayton County, GA |

On March 19, 2010, United Community Bank ("United"), which held an unrelated obligation from Robertson, filed a complaint against Robertson and the Robertson LLCs seeking to avoid the transfers to the Robertson LLCs under the Georgia Uniform Fraudulent Transfer Act ("UFTA Suit").  On August 9, 2011, the court granted United's partial summary judgment motion in the UFTA Suit, finding that Robertson's transfer of the Transferred Properties and other properties located in Georgia was fraudulent under the Georgia UFTA ("United UFTA Order").  Robertson and United then settled the matter in December 2011, resulting in the transfer of certain properties to United in exchange for a release of claims against Robertson.

---

[1] The four properties identified above as transferred to Woodmond continue to be used by Robertson as rental properties. For purposes of this order, these properties will be known collectively as the "Rental Properties".
[2] Additional properties were transferred to the Robertson LLCs, but subsequently transferred to United Community Bank to settle litigation discussed below.

Since the entry of the United UFTA Order, Robertson has continued to manage and occasionally use some of the Transferred Properties.  Robertson and her family continue to use the property located at 196 Hemlock Drive ("Hemlock Property") as a vacation home, consistent with its use prior to its transfer to Mykassi.  She also uses her own funds to pay the expenses on the Hemlock Property.  Robertson's brother lives rent-free at the property located at 7966 Wright Circle ("Wright Circle Property").   Robertson continues to collect rents from the Rental Properties, and pay expenses related to some of the Transferred Properties.  Robertson also holds insurance policies in her name for the Transferred Properties, and has executed leases in her name for certain of the Rental Properties.  Mykassi continues to own the Highway 197 property and Gilbert continues to own the Boulder lots. [3]

A second transaction at issue in this adversary proceeding involves property located at 3448 South Bay Drive, Jonesboro, Georgia ("South Bay Property").  Robertson purchased the property in July 2004 for $1,274,500 and a mortgage on it was granted to RBC Centura Bank.  Approximately one month after purchasing the South Bay Property, Robertson transferred the South Bay Property to her son, Clay Robertson.  The parties dispute the consideration received for the transfer.  The RBC loan was refinanced, but on September 28, 2008, Washington Mutual Bank foreclosed on the South Bay Property.  In November 2008, Robertson caused funds in the total amount of $600,000 to be transferred to an entity known as ASG Properties, Inc. ("ASG"), which was owned at least in part by Cory Graydon.  The parties dispute the nature of this transfer.  ASG used these funds, in part, to purchase the South Bay Property from Washington Mutual's successor.  Robertson, her son Brandon and her daughter-in-law Marisa then had a dispute with Graydon regarding the ownership and management of ASG.  On April 8, 2009, the

---

[3] The Statement of Undisputed Facts provides no information regarding the use or disposition of the Highway 197 acreage or the Boulder lots.  The Court construes the Plaintiff's Motion for Summary Judgment to only apply to the Woodmond Properties and the Hemlock Property.

South Bay Property was transferred back to Robertson.  The parties dispute both the nature of and consideration for this transfer.  Robertson, Brandon and Marisa ultimately settled the dispute with Graydon in April 2009, and Marisa Robertson became the sole owner of ASG.

In June 2009, Robertson transferred the South Bay Property back to ASG, and ASG then transferred it on the same day to an entity known as Bang Investments, LLC ("Bang Investments"), owned by Brandon Robertson, his wife Marissa and their three children.  Again the parties dispute the consideration for the transfer and the reasons for the transfer.  Brandon, Marisa and their children lived at the South Bay Property beginning in 2009 through at least 2012, and Robertson occasionally visited the property.  In April 2012, Bang Investments sold the South Bay Property to a third party purchaser for $930,000.  Bang then transferred funds to another Robertson company which transferred funds to Brand Properties, LLC, which Plaintiff contends was owned by Robertson's grandchildren.  In 2012, Brand Properties, LLC purchased property located at 3300 Running Springs Court, Franklin, Tennessee ("Tennessee Property").  Robertson visits her family at the property occasionally.  Plaintiff contends the proceeds from the sale of the South Bay Property were used, at least in part, to purchase the Tennessee Property.

On June 23, 2006 – approximately two years after the purchase of the South Bay Property – Robertson purchased a vacant lot known in this proceeding as "Lot 2A" that was located adjacent to the South Bay Property.  In July 2010, approximately one year after the transfer of the South Bay Property to Bang Investments, Robertson transferred Lot 2A to an entity known as JAMMIC, Inc. ("JAMMIC"), which was owned by Mike McCune, a childhood acquaintance of Brandon Robertson.  In April 2011, Lot 2A was transferred to Branch Group, LLC ("Branch Group"), of which Robertson's daughter Ivy Lowrey was and is the sole member.  The consideration for this transfer is disputed by the parties.  Branch sold Lot 2A to a third party in August 2013 for net proceeds of over $272,000.  In 2010, Branch Group received total transfers

of $537,658 from Robertson or a related company.  The reason for these deposits is disputed by the parties.  RGDM alleges that in early February 2014, Branch transferred $70,000 to a company owned by the Defendant's husband which paid household expenses of the Defendant and her husband, and in March 2015, Branch transferred $250,000 to a company owned by Brandon Robertson.  During the period January 2014 – February 2015, Brandon paid over $40,000 toward American Express bills on Robertson's card.  Robertson claims the payment was for Brandon's own expenses.  In March 2015, Robertson's daughter, Ivy, added an additional card to her America Express account for Robertson's use.

In February 2011, Robertson's husband became the sole owner of property at 78 Wall Street (the "Wall Street Property ") when he purchased it from the estate of Robertson's father. The Court notes the Wall Street Property is identified as Robertson's home address in her bankruptcy filing.  Robertson's husband has had separate income and accounts for the duration of his marriage to Robertson.

## ANALYSIS

### *I. Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c).  "The substantive law [applicable to the case] will identify which facts are material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th  Cir. 1993).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Anderson, 477 U.S. at 248.  The party moving for summary judgment has "the initial responsibility of informing the … court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (*citing* Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553).  What is required of the moving party, however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

> When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim' (cites omitted) in order to discharge this 'initial responsibility'.  Instead, the moving party simply may 'show – that is, point out to the … court – that there is an absence of evidence to support the nonmoving party's case.  (cites omitted).  Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Four Parcels of Real Prop., 941 F.2d at 1437-38 (*citing* Celotex, 477 U.S. at 323-31, 106 S.Ct. at 2553-57).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings.  See Fed. R. Civ. P. 56(e).  Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts.  Hairston, 9 F.3d at 918.  When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party.  Id.

The standard for the grant of summary judgment is not affected by the filing of cross-motions for summary judgment.  "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance

with the Rule 56 standards." 10A C. Wright, A. Miller & M. Cane, Fed. Prac. & Proc., Sec. 2720 at 335-36 (3rd Ed. 1889). Cross-motions can, however, illuminate whether there is a factual dispute or where the parties generally agree as to the material facts or the controlling legal theories. See United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984); Strickland v. Alexander, Civ. Act. No. 1-12-CV-02735-MHS (Dist. Ct. N.D. Ga. Sept. 8, 2015).

Here, the burden is on the creditor seeking to bar a discharge or to except a debt from discharge to prove the case by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 287-88 (1991); see also Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994). As a result, Plaintiff and Defendant have different burdens of proof in their respective motions. Plaintiff must present affirmative evidence in support of its motion. Defendant need not submit affidavits in support of her motion, but must direct the Court to the portions of the record that support her position. In response to Defendant's motion, Plaintiff is required to direct the court to evidence in the record indicating that a dispute exists in the facts material to its claims.

## II. Objection to Discharge under 11 U.S.C. § 727(a)(2)

Both parties seek summary judgment on RGDM's Section 727(a)(2) claim. Section 727 of the Bankruptcy Code provides:

(a)     The court shall grant the debtor a discharge, unless (*) –

… (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

(A)     property of the debtor, within one year before the date of the filing of the petition; or
(B)     property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).  Thus, to deny a debtor a discharge under this section, a plaintiff must show the debtor transferred, removed or concealed his property, within the requisite time period, and had the requisite intent to hinder, delay or defraud.  "Section 727(a)(2) is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets."  6 Collier on Bankruptcy ¶ 727.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. Supp. 2013).

Under the broad definition of transfer in 11 U.S.C. § 101(54), even a disposition of possession, custody or control could qualify as a transfer.  Removal, on the other hand, is "an actual or physical change in the position or locality of property of the debtor resulting in a depletion of the debtor's estate."  Id., ¶ 727.02[6][a] (16th ed. Supp. 2010).  Concealment includes physical hiding of the property, and "other conduct, such as placing assets beyond the reach of creditors or withholding knowledge of the assets by failure or refusal to divulge owed information."  Id. ¶ 727.02[6][b]   (citing San Jose v. McWilliams, 284 F.3d 785 (7th Cir. 2002); Keeney v. Smith (In re Keeney), 227 F.3d 679, 682-83 (6th Cir. 2000)); see also Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1293 n.1 (10th Cir. 1997).  The concealment of the interest must occur within the year prior to the bankruptcy filing.  Transfers made more than one year prior to the petition date may fall within Section 727(a)(2) if the debtor retained a concealed interest in the asset.  See R.I. Depositors Econ. Prot. Corp. v. Hayes (In re Hayes), 229 B.R. 253, 259-60 (B.A.P. 1st Cir. 1999); Rotella & Assoc., P.A. v. Bellassai (In re Bellassai), 451 B.R. 594, 602 (Bankr. S.D. Fla. 2011).

Finally, a creditor proceeding under Section 727(a)(2) must prove the debtor possessed an actual intent to hinder, delay or defraud creditors or the trustee when he transferred, concealed or removed his or the estate's property.  The Eleventh Circuit has made clear that a preferential transfer is not the type of transfer which will bar a discharge.  Miller, 39 F.3d at 307; see also

Hultman v. Tevis, 82 F.2d 940, 941 (9th Cir. 1936); Rutter v. Gen. Motors Acceptance Corp., 70 F.2d 479, 481-82 (10th Cir. 1934); Ins. Office of America, Inc. v. Wall (In re Wall), 2008 WL 8792259, at *4 (Bankr. S.D. Ga. Mar. 31, 2008).  Constructive fraud is also insufficient.  Miller, 39 F.3d at 306.  Actual fraudulent intent, however, may be inferred from the circumstances surrounding the transfer or concealment.  Emmett Valley Assocs. v. Woodfield (In re Woodfield), 978 F.2d 516, 518 (9th Cir. 1992).  The actions at issue should demonstrate "culpable intent", such that the actions are "blameworthy in an equitable sense."  Belmont Wine Exch., LLC v. Nascarella (In re Nascarella), 492 B.R. 914, 916 (Bankr. M.D. Fla. 2013) (cites omitted).

## A. Res Judicata and Collateral Estoppel

RGDM first argues the doctrine of *res judicata* binds the Court to the United UFTA Order and therefore Robertson's fraudulent intent in transferring the Transferred Properties is conclusively decided for purposes of the Section 727(a)(2) claim.  Robertson disputes that *res judicata* is applicable, but does not dispute the issuance of the United UFTA Order and its findings.

RGDM appears to use the terms *res judicata* and collateral estoppel interchangeably; however, they are distinct concepts.  Precision Air Parts, Inc. v. Avco Corp., 736 F.2d 1499, 1501 (11th Cir. 1984).  *Res judicata*, or claim preclusion, "bars a second suit involving the same parties and the same causes of action on all matters that were part of the first suit and all issues that could have been litigated."  Id. (citing Johnson v. United States, 576 F.2d 606, 611 (5th Cir. 1978)).  Collateral estoppel, or issue preclusion, "precludes relitigation only of issues that were actually litigated in the initial suit, whether or not the second suit is based on the same cause of action."  AVCO Corp., 736 F.2d at 1501; Johnson, 576 F.2d at 611.  Thus "whereas *res judicata* forecloses all that which might have been litigated previously, collateral estoppel treats as final

only those questions actually and necessarily decided in a prior suit." Brown v. Felson, 442 U.S. 127, 139 n.10 (1979).

It has been uniformly held that *res judicata* cannot be used to bind a bankruptcy court to the finding of another court regarding a debtor's discharge or the dischargeability of certain debt. See Grogan v. Garner, 498 U.S. 279 (1991); Jeffrey M. Goldberg & Assoc. v. Holstein (In re Holstein), 299 B.R. 211 (Bankr. N.D. Ill. 2003); see Beeber v. Beeber (In re Beeber), 239 B.R. 13, 21 (Bankr. E.D.N.Y. 1999). Such determinations fall within the exclusive purview of the bankruptcy court. The United UFTA Order did not make any determination as to Robertson's discharge, and even if it had the Court would not be bound by it. Accordingly, the doctrine of *res judicata* does not apply in this case.

Collateral estoppel, on the other hand, is applicable to matters of discharge and dischargeability. See Sterling Factors, Inc. v. Whelan, 245 B.R. 698, 704 (N.D. Ga. 2000); see also Beeber, 239 B.R. at 21; see Sikes v. Norton (In re Norton), 185 B.R. 945, 950 (Bankr. N.D. Ga. 1995). When reviewing a state court judgment under the doctrine of collateral estoppel, "a federal court must accord the judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered." Newton v. Lemmons (In re Lemmons), 2005 WL 6487216, at *2 (Bankr. N.D. Ga. Dec. 20, 2005); see also St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 675-76 (11th Cir. 1993). This Court must turn to Georgia law to determine the preclusive effect of the United UFTA Order against Robertson. Lewis v. Lowery (In re Lowery), 440 B.R. 914, 921-22 (Bankr. N.D. Ga. 2010) (citing Hebbard v. Camacho (In re Camacho), 411 B.R. 496, 501 (Bankr. S.D. Ga. 2009)). Under Georgia law, a party may only assert the doctrine of collateral estoppel when the following elements have been satisfied: (1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action;

and (5) the parties had a full and fair opportunity to litigate the issues in question.  <u>In re Lemmons</u>, 2005 WL 6487216, at *2.

The first question here is whether there is an identity of parties.  While Robertson is a party to both actions, Plaintiff was not a party to the United UFTA action.  By arguing that the United UFTA Order resolves the question of  Robertson's fraudulent intent for Section 727(a)(2) purposes, RGDM is asserting offensive collateral estoppel, where "the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully against different plaintiffs."  <u>Kirschner v. Blixseth</u>, 2014 WL 12573851, at *6 (C.D. Cal. June 18, 2014).  Although federal courts permit the use of offensive collateral estoppel consistent with the decision of the United States Supreme Court in <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322 (1979), Georgia continues to follow the traditional rule that identity of the parties or the privies is required for the use of collateral estoppel.  <u>See</u> <u>Community State Bank v. Strong</u>, 651 F.3d 1241, 1264 (11th Cir. 2011) (applying Georgia law); <u>Wickliffe v. Wickliffe Co.</u>, 227 Ga. App. 432, 434 (1997).  RGDM was not a party to United's UFTA lawsuit, so it could only assert collateral estoppel if it is considered a privy of United.

"Privity is established where a party's interests are fully congruent with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right."  <u>Dennis v. First Nat. Bank of the South</u>, 293 Ga. App. 890, 893 (2008) (citing <u>Seay v. Roberts</u>, 275 Ga. App. 295, 296 (2005)).  A party is the privy of another "where there is a mutual or successive relationship to the same right."  <u>Smith v. Nasserazad</u>, 247 Ga. App. 457, 458 (2001).  In other words, "there is privity within the meaning of the doctrines of *res judicata* and collateral estoppel where there is an identity of interest and privity in estate, so that a judgment is binding as to a subsequent grantee, transferee, lienor, or lessee of property."  <u>Id.</u> (quoting 47 Am. Jur. 2d 87, Judgments § 663 (1995)) (brackets omitted).

"Privity is not established by the mere fact that the persons may happen to be interested in the same question or in proving the same state of facts." Smith v. Wood, 115 Ga. App. 265, 268-69 (1967) (citing Coleman v. Bosworth, 180 Iowa 975, 984 (1917)).  Georgia courts acknowledge that determinations of privity depend on the facts of a given case, and that there "is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of *res judicata* and collateral estoppel…." ALR Oglethorpe, LLC v. Henderson, 336 Ga. App. 739, 743-44 (2016).  As a result, courts have found privity to exist in a number of different factual situations. Cf. Lilly v. Heard, 295 Ga. 399, 404-05 (2014) (privity exists where common interest is a matter of public concern); Walker v. Hamilton, 210 Ga. 155(2) (1953) (same); Brown & Williamson Tobacco Corp. v. Gault, 280 Ga. 420, 421-22 (2006) (same, under *res judicata* where privity requirement is the same); see also Minnifield v. Wells Fargo Bank, N.A., 331 Ga. App. 512, 516-17 (2015) (privity exists for defensive use of collateral estoppel where parties have same interest in defending against same claim); see ALR Oglethorpe, LLC v. Henderson, 336 Ga. App. 739, 744 (2016) (privity exists for defensive use of *res judicata* where liability of party asserting the defense is derivative of party in prior suit); see also Dalton Paving & Const., Inc. v. South Green Const. of Georgia, Inc., 284 Ga. App. 506, 508 (2007); McCumber v. Petroleum Services Group, LLC, 333 Ga. App. 459, 462 (2015) (parties "so connected in law and have such an identity of interest" where sole proprietor of corporation brings claim previously asserted by corporation).

RGDM is not in privity with United in the traditional sense.  It is not a successor to United's note or security deed.  RGDM may argue, however, that it has an identity of interest with United and other creditors on the UFTA claim because the facts relevant to this UFTA claim do not vary based on the creditor (both RGDM and United were creditors at the time of the transfers).

The Court need not decide the issue here for two reasons.  First, an additional requirement for the use of collateral estoppel is that the order be final.  The facts before the Court do not establish that the United UFTA Order is final.  The order states it is a grant of partial summary judgment.  Under O.C.G.A. § 9-11-54, such an order is only final if the court has directed entry of a final judgment upon an express finding of no just reason for delay.  It is undisputed that Robertson settled her dispute with United after entry of the order.  This Court has not been presented with evidence to allow it to determine the United UFTA Order was final.

Secondly, the Court need not decide the collateral estoppel issue because Robertson generally concedes it for purposes of the Summary Judgment Motions, arguing though that the United UFTA Order does not determine concealment under Section 727.  This Court agrees.  As is discussed in greater detail below, a plaintiff does not need to prove that an initial transfer was fraudulent to prevail under the continuing concealment doctrine.  Instead, the plaintiff only needs to show the debtor fraudulently concealed a retained interest within the year prior to bankruptcy.  The fact that a relevant transfer was fraudulent is not dispositive, but does provide some evidentiary value in a continuing concealment analysis.[4]  See Rosen v. Bezner, 996 F.2d 1527 (3d Cir. 1993).  Therefore, a finding that the United UFTA Order shows Robertson's fraud with respect to certain transfers would not resolve the matter of intent to conceal within the year prior to bankruptcy.

## B. Continuing Concealment

RGDM relies on the doctrine of continuing concealment for its Section 727(a)(2) claim because the transfers of property in which RGDM alleges Robertson retained an interest all

---

[4] RGDM cites three separate cases for the proposition that res judicata (or in this case, collateral estoppel) resolves the question of Robertson's intent.  None of them fully support RGDM's argument on the facts of this case.  First, in Klein v. Weidner (In re Weidner), 476 B.R. 873 (E.D. Pa. 2012), the court found intent was conclusively determined for purposes of a discharge analysis, but the relevant transfers occurred within a year prior to the bankruptcy filing.  Id. at 877-78.  Second, in the cases of In re Holstein, 299 B.R. 211 (Bankr. N.D. Ill. 2003) and In re Thacker, 2015 WL 2455539 (Bankr. N.D. Fla. May 22, 2015), the courts noted collateral estoppel applied for purposes of a discharge analysis, but both were continuing concealment cases that relied on evidence other than prior judgments.

occurred outside of the year prior to Robertson's bankruptcy filing. The doctrine of continuing concealment allows the court to rely on an alleged transfer that was made beyond the look-back period provided in Section 727(a)(2), where the transferor retained an interest in the property that remained concealed from creditors during the look-back period. Coady v. D.A.N. Joint Venture III, L.P. (In re Coady), 588 F.3d 1312, 1315-16 (11th Cir. 2009). The actual transfer itself need not be literally concealed; rather the debtor must conceal the retained interest in the property. Friedell v. Kauffman (In the Matter of Kauffman), 675 F.2d 127, 128 (7th Cir. 1981) (citing Matter of Vecchione, 407 F. Supp. 609, 615 (E.D.N.Y. 1976)); In re Norton, 185 B.R. 945, 950 (Bankr. N.D. Ga. 1995). To prove a continuing concealment, the plaintiff must show that the transferor has retained some beneficial interest that has been concealed from creditors. Coady, 588 F.3d at 1316; see also Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993). What that beneficial interest is varies from case to case, though typically the mere retention of benefits of ownership or continued use or possession of property previously transferred is insufficient. Collier on Bankruptcy ¶ 727.02[2][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). "Conduct predating the critical year may provide circumstantial evidence of concealment activity and fraudulent intent within that year." Rhode Island Dep. Econ. Prot. Corp. v. Hayes (In re Hayes), 229 B.R. 253, 260 (citing Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997)). To prevail, RGDM must prove Robertson concealed a beneficial interest in property, accompanied by the requisite intent, within the year preceding bankruptcy. In re Hayes, 229 B.R. at 260 (citing Rosen, 996 F.2d at 1531, 1533).

### ***Transferred Properties***

RGDM first alleges Robertson retained an interest in the Transferred Properties. RGDM contends that Robertson collects the rent in cash from the Rental Properties and uses it to pay the mortgages on the Rental Properties and on the Hemlock Drive Property, which are in her name.

RGDM points out that Robertson continues to hold insurance policies in her name and has continued to execute leases for the Rental Properties in her name.  RGDM also argues Robertson retains a concealed interest in the Hemlock Property.  RGDM asserts Robertson (1) continues to use the Hemlock Property as a vacation home for her family, which was its use prior to the transfer; (2) pays the Hemlock Property mortgage from the Rental Properties; and (3) uses her personal funds for expenses of the Hemlock Property.  In short, RGDM claims, nothing changed when the properties were transferred.

Robertson responds by arguing that the transfer of the Rental Properties was never concealed and could have easily been discovered by RGDM.  As discussed above, however, case law clearly holds that property need not have been literally concealed to fall under the doctrine of continuing concealment.  See In the Matter of Kauffman, 675 F.2d at 128.  Robertson argues further her use of the rents to pay mortgages and expenses for the Rental Properties is a bona fide purpose, and there is usually no funds remaining after those mortgages and expenses are paid.  She flatly denies that any of the rental income was used to pay her personal expenses.  Robertson also stresses that the transfers of the Rental Properties occurred shortly after the death of her father and were made on the advice of counsel.

Whether Robertson retained an interest in any of the Transferred Properties remains in dispute.  Continued use and enjoyment of the property are evidence of a retained interest, but are generally insufficient alone to warrant a finding that the debtor has retained an interest.  In re Norton, 185 B.R. at 951.  Robertson asserts that the Transferred Properties were transferred to the Robertson LLCs, and that even though Robertson still operates them as rental units she does not retain any actual ownership interest in them.  Furthermore, Robertson's intent during the year prior to her filing remains in dispute.  RGDM asserts that keeping the Transferred Properties in the Robertson LLCs was an effort to frustrate collection efforts, while Robertson argues that the

properties were kept in separate entities on the advice of counsel.  Robertson's defenses do not resolve the matter in her favor, see Southeastern Pa. Synod v. Gotwald (In re Gotwald), 488 B.R. 854, 872-74 (Bankr. E.D. Pa. 2013).  They do, however, create a dispute of fact as to her continuing interest in the properties and her intent within the year prior to bankruptcy.  Summary judgment is not warranted for either party on Plaintiff's allegation that Robertson concealed an interest in the Transferred Properties.

### *South Bay Property*

Next, RGDM argues that Robertson retained an interest in proceeds from the sale of the South Bay Property which proceeds were used to acquire the Tennessee Property.  It concludes Robertson has a concealed interest in the Tennessee Property.  Specifically, RGDM argues the transfer of the South Bay Property in 2004 to Clay Robertson was for no consideration, and that the subsequent transfers resulted in the eventual sale of the property for substantial proceeds. RGDM alleges Robertson's son Brandon used the sale proceeds to purchase property in Tennessee which Robertson visits from time to time.

Robertson disputes that the transfer of the South Bay Property to her son, Clay, was for no consideration.  She further states that by 2009, she was no longer involved with the various transfers of the South Bay Property.  Robertson concedes she occasionally visited the South Bay Property when her children lived there, and she has visited the Tennessee Property, but contends her visits were simply overnight stays that are not uncommon among family members.

Courts have found that the doctrine of continued concealment can apply to the concealment of sale proceeds.  See Hubbell Steel Corp. v. Cook (In re Cook), 126 B.R. 261, 268 (E.D. Tex. 1991).  There is insufficient undisputed evidence in the record, however, to find that Robertson's discharge should be denied for concealing an interest in the Tennessee Property. The evidence presented is not conclusive as to the tracing of the proceeds and Robertson's

occasional use of the South Bay Property and the Tennessee Property is insufficient by itself for the Court to deny Robertson's discharge under Section 727(a)(2). See In re Norton, 185 B.R. at 951. But Robertson has not presented undisputed evidence justifying summary judgment for Robertson. The timing of the transfers, coupled with the familial relationship of the transferor and transferee is sufficient to deny her motion for summary judgment.

RGDM's allegations regarding Lot 2A and the payment of Robertson's expenses are a bit confusing. Plaintiff's motion includes much detail regarding the transfer of Lot 2A. RGDM's real complaint is that Lot 2A was transferred without consideration. But because that transfer occurred in 2010, almost five years before the filing of the bankruptcy petition, even if Plaintiff is correct that the property was fraudulently transferred, it does not establish a basis for denial of discharge under Section 727(a). Plaintiff does not seem to argue that Robertson holds a concealed interest in Lot 2A. Such an argument would not prevail because Lot 2A was transferred to a third party in August 2013 and any interest ceased at that time. Instead, RGDM seems to be focused on transfers of funds from Robertson or at her direction to Branch Group. RGDM alleges Robertson transferred funds to Branch Group controlled by her daughter, which transferred funds to Debtor's son's and husband's companies. RGDM alleges Branch, Brandon Robertson and Robertson's husband subsequently used those funds to pay Robertson's expenses, including the cost of vacations and credit card bills.

Robertson argues that the funds she received from Brandon Robertson were used exclusively to pay for expenses he incurred on her American Express card rather than any of her personal expenses. She disputes that any of the $537,000 transferred to Branch in 2010 was used for her expenses in 2014 and 2015. She also disputes that any of the $70,000 transferred to her husband's company in 2014 was used for her expenses.

While the doctrine of continued concealment <u>can</u> apply to the concealment of sale proceeds or cash, RGDM has pointed to no evidence in the record that the funds transferred to Branch Group in 2010 are the funds which Branch Group transferred to Brandon Robertson's company on March 17, 2015 or to Robertson's husband's company in early 2014. Similarly, to the extent RGDM is attempting to argue that the proceeds from the sale of Lot 2A were used by the Branch Group to pay expenses of the Debtor, RGDM has pointed the Court to no evidence in the record that would permit such tracing. As noted above, when a motion for summary judgment is filed by a party not having the burden of proof, the respondent with the burden of proof must present to the Court specific evidence on which the Court could find there was a disputed issue of fact. Since RGDM has pointed the Court to no such evidence that would permit the tracing of the $537,000 to any money provided to Robertson, Robertson is entitled to summary judgment on the issue of concealment by Robertson of an interest in Lot 2A or its proceeds or in the $537,000 transferred to the Branch Group.

### *<u>Wall Street Property</u>*

In the complaint, RGDM alleges facts regarding the transfer of the Wall Street Property and summarily concludes that the transfer of the Wall Street Property from the estate of Robertson's father to Robertson's husband was fraudulent. Although not clear, the complaint insinuates that the Debtor holds a continuing interest in the Wall Street Property. RGDM's Motion for Summary Judgment includes nothing about the Wall Street Property. Robertson's Motion, however, does seek summary judgment with respect to the Wall Street Property transaction. In response to Robertson's Motion for Summary Judgment, RGDM only states that <u>Robertson</u> has not produced any evidence that fair value was paid to her father's estate for the Wall Street Property and therefore summary judgment is not appropriate.

As stated above, when the non-moving party has the burden of proof at trial, such as here, the non-moving party (RGDM) cannot merely rely on allegations or denials in its own pleadings. Robertson has included her own affidavit with the Motion for Summary Judgment, as well as the 2004 examination of her husband, which established the undisputed facts that her husband had his own money and purchased the interest in the house with his own money. Plaintiff's response seems to be based on the idea that the cause of action at issue is one for fraudulent conveyance; it is not. Whether fair value was paid for the house in 2011 is not at issue. Rather, the issue is whether Robertson concealed an interest in the house within the year prior to the filing of the bankruptcy petition with intent to defraud her creditors. Plaintiff has the burden of proof on this issue and has pointed the Court to no evidence that Robertson retained an interest in the house in the year prior to the filing of the bankruptcy petition and that if she had such an interest, it was concealed for the purpose of defrauding creditors. Plaintiff's attempt to shift the burden of proving a transaction was not fraudulent is inappropriate, as it is the Plaintiff's burden to show that the transaction is a fraudulent concealment. As such, Robertson's Motion for Summary Judgment with respect to the Wall Street Property is granted.

As to the Transferred Properties and the South Bay Property, disputes exist as to whether Robertson retained a beneficial interest in the properties or the proceeds thereof within a year of the bankruptcy filing *and* acted with the relevant intent during the year preceding her bankruptcy filing. Accordingly, summary judgment is not warranted for either party on RGDM's continuing concealment claim under Section 727(a)(2) as to the Transferred Properties and the South Bay Property. As to the Wall Street Property, Lot 2A or the $537,000 transfer to Branch Group, RGDM has pointed the Court to no evidence supporting its position and Robertson is entitled to summary judgment.

## C. Dissipation of Assets Pre-Petition

RGDM also argues that Robertson's discharge should be denied under Section 727(a)(2) because she dissipated certain assets during the year prior to filing her bankruptcy petition. Specifically, RGDM argues that in the year prior to filing her petition, Robertson used rental income from the Rental Properties, money from Branch Group to her husband's company and money from her son to pay for her personal expenses and various vacations. Section 727 does not contain a provision regarding "dissipation" of assets. Instead, the provision is the same as cited above – whether the defendant transferred, removed, destroyed, mutilated or concealed property of the debtor. The Court has held above that a question of fact exists as to whether the Rental Properties (and therefore the rents) were property of the debtor. A dispute also exists as to Robertson's use of such rental proceeds. Assuming the Rental Properties are property of the Defendant, use of such funds to support the Rental Properties or to pay reasonable personal expenses is not necessarily prohibited. But the exact use of the funds is disputed.

The facts regarding Robertson's use of the funds from her son Brandon and from her husband's company are also in dispute. The Court has held above that Robertson is entitled to summary judgment on the issue of her interest in the funds transferred from Branch to Brandon Robertson's company and to her husband's company. The question here is slightly different: whether the payment by Brandon Robertson to Defendant – approximately $40,000 – is an asset and whether Defendant's husband transferred any funds to her which became property of the Debtor. Only if these transfers resulted in property of the Defendant could their use become an issue. Defendant acknowledges receiving funds from Brandon, but contends they were in payment of his own obligations. Defendant contends the funds to her husband's company were provided as a loan and denies receiving any benefit from the funds transferred from Branch to her husband's company. The parties point the Court to conflicting evidence so summary

judgment is not warranted for either party on RGDM's Section 727(a)(2) claim on this set of facts.

## D. Dissipation of Assets Post-Petition

Whereas Section 727(a)(2)(A) encompasses debtor's prepetition acts, Section 727 (a)(2)(B) covers any post-petition acts by a debtor to transfer or conceal property of the estate. Ayers v. Babb (In re Babb), 358 B.R. 343, 352 (Bankr. E.D. Tenn. 2006). For denial of a debtor's discharge under Section 727(a)(2)(B), a plaintiff must prove the debtor transferred, removed, destroyed, mutilated, or concealed property of the estate with actual intent to hinder, delay or defraud a creditor after the petition date. Harker v. West (In re West), 328 B.R. 736, 752 (Bankr. S.D. Ohio 2004). The intent of Section 727(a)(2)(B) is to deny a discharge to a debtor who fails to disclose transactions related to estate assets subsequent to filing his or her petition. In re Babb, 358 B.R. at 352. "Once a creditor establishes its case, the burden shifts to the debtor to provide the court with a convincing explanation for the concealment." Id. (citing Royer v. Smith (In re Smith), 278 B.R. 253, 257 (Bankr. M.D. Ga. 2001)).

RGDM argues that the finding of fraud in the United UFTA Order means the Rental Properties should be considered property of Robertson's bankruptcy estate. RGDM further argues that Robertson has executed leases for the Rental Properties in her name, and that such leases and any rents paid pursuant to them would also be property of the estate. Finally, RGDM alleges Robertson has converted the rents collected under these leases for personal use post-petition.

As an initial matter, Robertson disputes the allegation that any rental income was converted for use for personal expenses. Furthermore, the Court notes that the United UFTA Order found the transfers were fraudulent under the Georgia Uniform Fraudulent Transfer Act, O.C.G.A. § 18-2-70 *et seq*. It did not provide for any relief to United. Possible relief for a

creditor that proves a transfer was fraudulent under the Georgia UFTA includes the avoidance of the transfer itself.  O.C.G.A. § 18-2-77(a)(1).  The statute makes the transfer *voidable*, rather than void.  Other relief could have included a monetary judgment or attachment.  United sought all possible relief.  Because the court did not order any relief for United, the effect of the United UFTA Order was that the transfer of certain Transferred Properties was voidable, and not that Robertson's ownership interest in the Transferred Properties revested automatically.   As previously discussed, it is not clear from the record that Robertson is the legal owner of any of the Transferred Properties, and there is no evidence in the record that shows the reconveyance of any of the Transferred Properties.   It is also unclear, given the uncertainty of Robertson's ownership interest in the Transferred Properties, whether Robertson has the right to execute leases in her name personally, or whether Robertson has any right to collect the rental income. Given these remaining questions, summary judgment is not warranted for either party on RGDM's Section 727(a)(2)(B) claim related to the Rental Properties.

RGDM also argues that Robertson dissipated her assets post-petition by "permitting the proceeds of the $250,000 Branch transfer to A-1 post-petition".  Here, RGDM is arguing that Branch's transfer of $250,000 to Robertson's son Brandon's company was a transfer of the Debtor's assets.   The Court has held above, though, that Robertson is entitled to summary judgment on the issue of whether the money transferred by Branch can be traced to funds paid to Branch in 2010.  As such, Robertson is entitled to summary judgment on so much of the Count as relates to the transfer by Branch to A-1.

### III. Objection to Discharge under 11 U.S.C. § 727(a)(4)

To deny a debtor a discharge under Section 727(a)(4)(A), a plaintiff must show "… the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account; …".  11 U.S.C. § 727(a)(4)(A).  Under this section, a plaintiff must show there was a

false oath, that it was material, and that it was made knowingly and fraudulently. A misrepresentation is material "if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984) (cites omitted). Detriment to creditors need not be shown. Id. Furthermore, the debtor may not defend himself by claiming the assets omitted were worthless. Id. "Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them." Id.

While the definition of materiality is broad, it is not without limits as the purpose of the requirement the debtor make disclosures is to allow the trustee or creditors to investigate the debtor's affairs and recover any assets without "costly investigations". Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999). So if the omission would not assist or impede the debtor or creditors in this endeavor, it is not material. Id.; see also Cadle Co. v. Pratt (In re Pratt), 411 F.3d 561, 568 (5th Cir. 2005) (failure of debtor to list his position as trustee of trust for his children was not material because the knowledge would not assist the debtor's creditors); Spencer v. Blanchard (In re Blanchard), 201 B.R. 108, 130 (Bankr. E.D. Pa. 1996) (undervaluing assets that would have been exempt was not material); Manning v. Watkins (In re Watkins), 474 B.R. 625, 654-55 (Bankr. N.D. Ind. 2012), aff'd sub nom.; Manning v. Watkins, 2013 WL 3989412 at *6 (N.D. Ind. July 31, 2013) (failure to disclose interest in corporations not material to administration of the estate); Ivory v. Barbe (In re Barbe), 466 B.R. 737, 748 (Bankr. W.D. Pa. 2012) (failure to disclose dismantled stage immaterial because had no value).

Finally, a plaintiff must show that the omission or misstatement was made knowingly and with intent to deceive. A plaintiff must demonstrate actual common, not constructive, fraud, Wines v. Wines (In re Wines), 997 F.2d 852, 856 (11th Cir. 1993), but actual intent may be

inferred from circumstantial evidence.  Ingersoll v. Kriseman (In re Ingersoll), 124 B.R. 116, 121

(M.D. Fla. 1991).  Furthermore, "a reckless indifference to the truth is sufficient to constitute the

requisite fraudulent intent for denying a discharge under section 727."  Cadle Co. v. Taras (In the

Matter of Taras), 2005 WL 6487202, at *4 (Bankr. N.D. Ga. Aug. 19, 2005) (cite omitted).  A

series or pattern of errors or omissions may have a cumulative effect giving rise to an inference

of intent to deceive.  Beaubouef v. Beaubouef (In the Matter of Beaubouef), 966 F.2d 174, 178

(5th Cir. 1992).  The discharge may not be denied, however, when the untruth was the result of a

mistake or inadvertence.  Id.  Further, while the omission of worthless assets may be material,

the value of the asset omitted may be evidence of the debtor's intent, or lack thereof, to deceive.

See Garcia v. Coombs (In re Coombs), 193 B.R. 557, 565-66 (Bankr. S.D. Cal. 1996).

RGDM alleges Defendant made five material misstatements or omissions in various parts

of her bankruptcy petition and schedules, each of which will be addressed in turn.  First, RGDM

argues Defendant failed to disclose her ownership interest in the Transferred Properties on her

bankruptcy schedules.  RGDM says the United UFTA Order proved the transfer of the

Transferred Properties to their respective LLCs was fraudulent and therefore Robertson still

owned them.  In response, Robertson contends the properties were still held by the LLCs, and

therefore she did not need to disclose the properties on her schedules.  As discussed above, the

effect of the United UFTA Order on the ownership of the Transferred Properties is not clear from

the record.  It is not clear the order was final and the evidence presented does not show that the

Transferred Properties revested in Robertson.  Therefore, whether Robertson holds an interest in

the Transferred Properties which required disclosure remains unresolved.

Second, RGDM argues Defendant failed to disclose the income she earned from the

operation and management of the Rental Properties, and only amended her schedules to disclose

the income when it was brought to her attention during the bankruptcy proceedings.  RGDM

alleges the amendment to the schedules did not negate the falsity of the failure to disclose the income, and that her intent is shown by the disclosure of the income on her personal tax returns. Robertson responds by arguing that she believed the rental income to be income of the Robertson LLCs, and that the income was included on her tax returns because the Robertson LLCs are structured as pass-through entities, such that their income is reported on her individual returns. RGDM is correct that the amendment to the schedules does not negate the falsity of the prior omission; however, a dispute remains as to whether the income had to be scheduled and if so, Robertson's intent in omitting the income on her schedules.

Third, RGDM argues Defendant failed to disclose as income funds her son paid for expenses on an American Express credit card account.  In response, Robertson contends the funds provided by her son were used to pay expenses incurred by him alone, and in any event gifts from family are not considered income for disclosure purposes.  Contributions from family members are relevant and may need to be included on a debtor's Schedule I if the contributions are regular, as opposed to isolated, or gifts.  See  Free at Last Bail Bonds, Inc. v. Franklin-Graham (In re Franklin-Graham), 2008 WL 7842108, at *7 (Bankr. N.D. Ga. Apr. 17, 2008). There is a dispute, however, as to whether the relevant expenses were incurred by Defendant, or whether the payment was a contribution to the Defendant.  A dispute also exists as to Robertson's intent in failing to disclose any such income.

Fourth, RGDM argues Defendant listed the value of her interest in the Mykassi and Gilbert LLCs as $0 when she knew or should have known the properties held by the LLCs had value.  Robertson responds that the values included on the schedules were included on the advice of counsel and that she could not provide an accurate valuation of her interests.  While the value of property held by a limited liability company is a factor in determining the value of an interest in a limited liability company, the latter determination is a complicated question of fact that

likely involves more than a determination of the value of the properties held by the LLCs in question.  See Estate of Coons v. Commissioner of IRS, 2017 WL 1501062 (11th Cir. Apr. 27, 2017).  The evidence submitted is not conclusive as to the value of the properties, the value of the limited liability companies, or the intent of the Defendant.

Finally, RGDM argues Defendant falsely listed the debt owed to United as still outstanding on her schedules.  Robertson responds by admitting United was no longer owed any debt, but argues that its inclusion in the schedules was an error.  Based on the evidence in the record, the Court cannot find this false statement was made with the requisite intent needed to deny Robertson's discharge.  Plaintiff has pointed to no evidence of intent to deceive with the inclusion of the United debt or the materiality of such omission.  Summary judgment is granted to the Defendant on this allegation.

Other than granting summary judgment to the Defendant on whether scheduling the United debt was a false oath, summary judgment is not warranted in either party's favor on RGDM's Section 727(a)(4) claim.

### IV. Objection to Discharge under 11 U.S.C. § 727(a)(3)

Plaintiff argues the Debtor's discharge should be denied because she did not maintain adequate books and records.  To deny the Debtor a discharge under Section 727(a)(3), the Court must conclude:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C. § 727(a)(3).

"The purpose of § 727(a)(3) is to give creditors, the trustee and the bankruptcy court complete and accurate information concerning the debtor's affairs and to ensure that dependable

information is provided so that the debtor's financial history may be traced." <u>Hylan Debt Fund v.</u>
<u>Nestor (In re Nestor)</u>, 546 B.R. 482, 486 (Bankr. N.D. Ga. 2016) (citing <u>Harrington v. Simmons</u>
<u>(In re Simmons)</u>, 525 B.R. 543, 547 (B.A.P. 1st Cir. 2015)); <u>In the Matter of Juzwiak</u>, 89 F.3d
424, 427-28 (7th Cir. 1996) (cite omitted).   "Section 727(a)(3) has been consistently read to
impose an affirmative obligation on defendants to keep records appropriate to their
circumstances." <u>Bank of Am. v. Seligman (In re Seligman)</u>, 478 B.R. 497, 504 (Bankr. N.D. Ga.
2012) (citing <u>Hughes v. Lieberman (In re Hughes)</u>, 873 F.2d 262 (11th Cir. 1989)).   The debtor's
intent is not an element of a denial of discharge under Section 727(a)(3). <u>Trauner v. Burrowes</u>
<u>(In re Burrowes)</u>, 2011 WL 5035975, at *2 (Bankr. N.D. Ga. Oct. 13, 2011).   But the
requirement under Section 727(a)(3) that a debtor maintain recorded information from which
debtor's financial condition or business transactions might be ascertained is not absolute.   A
debtor may receive a discharge if the failure to keep records is "justified under all the
circumstances." <u>Milam v. Wilson (In the Matter of Wilson)</u>, 33 B.R. 689, 692 (Bankr. M.D. Ga.
1983).

Exactly what is required to meet the plaintiff's burden of proof has been debated by the
courts.   The bankruptcy court in <u>Strzesynski v. Devaul (In re Devaul)</u>, 318 B.R. 824 (Bankr.
N.D. Ohio 2004), required the moving creditor to "first offer evidence of the general nature of
debtor's business or personal financial position (e.g., consumer, business relationships and
interest, general nature of business interests and sources of income) and the types of transactions
about which recorded information is sought … Second, the plaintiff must present evidence
identifying for the court … what recorded information it alleges has been … not kept or
preserved by a debtor. … Third, the plaintiff must show how the missing recorded information
'might' enable a particular debtor's actual financial condition or business transactions to be
ascertained under the circumstances of the case", <u>id</u>. at 833, and in the relevant time period.

Burrowes, 2011 WL 5035975, at *2.  This Court adopted the Devaul approach in White v. White (In re White), 568 B.R. 894, 920 (Bankr. N.D. Ga. 2017).  "Records need not be kept in any special manner, nor is there any rigid standard of perfection in recordkeeping mandated by section 727(a)(3). On the other hand, courts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs."  Juzwiak, 89 F.3d at 427–28.  After this *prima facie* case is made, the burden shifts to the debtor to show that the failure to keep such documents and records is justified.  "The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances."  Wilson, 33 B.R. at 692.  Justification takes into account all circumstances such as the debtor's level of sophistication, level of education, types of assets and liabilities, and complexity of the debtor's business affairs. Id. (citing In the Matter of Goff v. The Russell Co. (In re Goff), 495 F.2d 199 (5th Cir. 1974)); Fisher v. Quay (In the Matter of Quay), 2005 WL 6488242, at *10 (Bankr. N.D. Ga. March 29, 2005) (citing US v. Trogdon (In re Trogdon), 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990)).  The courts have consistently held that the "standard for the disclosure of records for a sophisticated debtor is higher than that of an unsophisticated debtor."  Gebhardt v. Gartner (In re Gartner), 326 B.R. 357, 375 (Bankr. S.D. Tex. 2005).  The court has "broad discretion in determining the sufficiency of the records provided".  Neary v. Hughes (In re Hughes), 353 B.R. 486, 500 (Bankr. N.D. Tex. 2006).

RGDM alleges Robertson failed to keep any records related to the $600,000 transfer of funds to ASG, as well as any records that discuss how the loan was repaid or otherwise satisfied. This does not seem to be disputed as Robertson's response is that all parties agreed it was a loan. RGDM contends documentation of the transaction is necessary to understanding the Debtor's financial condition either as a basis for showing that the transfer of the South Bay Property was a fraudulent conveyance or to show that Robertson is owed $600,000 from ASG.  As discussed

above, whether the South Bay transfer was initially a fraudulent transfer is not determinative of whether the Debtor retained an interest in the property and is not determinative of whether she concealed any interest within the year prior to the filing of the bankruptcy petition in 2015.  But whether Robertson was owed $600,000 at the time the petition was filed would be relevant to her financial condition.  Whether a transfer constitutes a loan is a question of fact, and depends on a number of competing factors.  See Salloum v. Commissioner of IRS, 2017 WL 2821794 at *5 (U.S. Tax Court, June 29, 2017) (noting factors include the existence of a debt instrument, the existence of a written loan agreement, the provision of collateral securing the loan and the accrual of interest on the purported loan among other factors).  Documents regarding this transaction might enable the Court to determine Robertson's financial condition.  But the facts are disputed as to whether Robertson's failure to keep such records is justified since the parties themselves "understood" it was a loan.  Summary judgment is not appropriate for either party on whether Robertson's failure to maintain records of the $600,000 loan and its repayment is a basis to deny her discharge.

RGDM also argues Robertson instructed her tenants to pay their rents in cash so there would be no records of rents paid.  Robertson states the tenants have always paid their rent in cash.  She also states the rental income was included in her individual tax returns because the LLCs were pass-through entities.  Robertson notes that copies of the leases with the tenants were produced to Plaintiff.  Thus, Plaintiff has not established via the undisputed facts that Robertson failed to keep any records related to the rents collected from the Rental Properties.  On the other hand, whether the records retained by Robertson are sufficient to enable a court to determine Robertson's financial condition or the validity of the transactions with the Rental Properties also remains subject to dispute and summary judgment is not appropriate for either party on this issue.

Lastly, summary judgment cannot be granted to RGDM with respect to RGDM's allegation that documentation is necessary related to a transfer to Branch Group in 2010 of $537,658. Again, the transaction occurred five years before the filing of the bankruptcy petition. The Undisputed Facts do not establish that the money was transferred by Robertson nor do they establish as a matter of law that understanding this particular transaction is necessary to understanding the Debtor's financial condition at the time of her bankruptcy petition in 2015. As such, summary judgment is inappropriate for RGDM. On the other hand, Robertson has pointed to no undisputed facts which establish as a matter of law that records of the $500,000 plus transfer to Branch Group is not relevant to establishing her financial condition in 2015. The transaction is sizable and involves entities related to Robertson's children. As such, summary judgment is inappropriate for Robertson on Plaintiff's Section 727(a)(3) claim.

### *V. Objection to Discharge under 11 U.S.C. § 727(a)(5)*

RGDM also seeks summary judgment on its Section 727(a)(5) claim. The Court may deny a debtor's discharge under Section 727(a)(5) if:

> the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727(a)(5).

In an action under Section 727(a)(5), the objecting creditor has the initial burden of proof and must demonstrate: "(1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets." Olympic Coast Inv., Inc. v. Wright (In re Wright), 364 B.R. 51, 79 (Bankr. D. Mont. 2007); Hawley v. Cement Indus., Inc. (In re Hawley), 51 F.3d 246, 249 (11th Cir. 1995). "A focus on the two years prior

to the bankruptcy filing is common … [but] [i]nquiries beyond the two-year period may be warranted." Structured Asset Servs., L.L.C. v. Self (In re Self), 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005) (cites omitted).   Once the party objecting to the discharge establishes the basis for its objection, the burden then shifts to the debtor "to explain satisfactorily the loss." Chalik, 748 F.2d at 619.  But the "lost" assets must be assets of the debtor.

"The question of whether a debtor satisfactorily explains a loss of assets is a question of fact." Id. (citing Shapiro & Ornish v. Holliday, 37 F.2d, 407, 407 (5th Cir. 1930)).   For an explanation to be unsatisfactory, the court does not have to find that a debtor is lying. In the Matter of D'Agnese, 86 F.3d 732, 734 (7th Cir. 1996).  Under Section 727(a)(5), "[v]ague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." Chalik, 748 F.2d at 619.  "To be satisfactory, an explanation must convince the judge." Id. (cite omitted); see, e.g., First Texas Savings Ass'n, Inc. v. Reed (In re Reed), 700 F.2d 986, 993 (5th Cir. 1983) (cites omitted) (debtor's explanation that $19,586.00 was consumed by business and household expenses and gambling debts was unsatisfactory).  "Courts are not concerned with the wisdom of a debtor's disposition of assets but, instead, focus on the truth, detail, and completeness of the debtor's explanation of the loss." Self, 325 B.R. at 250 (cites omitted).  "Section 727(a)(5) requires that there be a satisfactory explanation of the loss of an asset, but does not require that the explanation be meritorious. … The court need only decide whether the explanation satisfactorily describes what happened to the assets, not whether what happened to the assets was proper". Great Am. Ins. Co. v. Nye (In re Nye), 64 B.R. 759, 762 (Bankr. E.D. N.C. 1986); Bailey v. Whitehead (In re Whitehead), 483 B.R. 902, 910 (Bankr. E.D. Ark. 2012).

RGDM alleges Robertson has failed to satisfactorily explain the loss of three assets: the $600,000 transfer to ASG and its repayment, the $537,568 transfer to Branch Group, and the use of the rental income from the Rental Properties.

The Court notes that the $600,000 transfer occurred in 2008, well outside of the ordinary range of time that a court would consider for section 727(a)(5) purposes.  Likewise the $537,568 transfer occurred in 2010, also outside of the relevant time period.  RGDM has not explained why the disposition of funds between five and seven years prior to Robertson's bankruptcy petition would keep her from being able to meet her liabilities in 2015.  Furthermore, Robertson asserts the $600,000 transfer was a loan and the $500,000 transfer covered a pre-existing indebtedness.  Finally, Robertson argues the rents were used to pay for mortgages, insurance and maintenance on all of the Rental Properties.[5]   Explanations have been provided for the disposition of all three assets.  Whether those explanations are sufficient (even if not meritorious) is a matter for trial.  Therefore, disputes exist as to these transactions, and summary judgment for either party on Plaintiff's Section 727(a)(5) count is not warranted.

*VI. Nondischargeability under 11 U.S.C. § 523(a)(2)*

RGDM and Robertson both seek summary judgment as to whether Plaintiff's debt is nondischargeable under 11 U.S.C. § 523(a)(2).

## A. Nondischargeability under Section 523(a)(2)(A) – Actual Fraud

RGDM seeks summary judgment that its debt is nondischargeable under Section 523(a)(2)(A) claiming it arises from actual fraud.  Section 523(a)(2)(A) excepts from discharge "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition…"  11 U.S.C. § 523(a)(2)(A).  The

---

[5] Because the ownership of the Transferred Properties remains in dispute, a question exists as to what extent the income from the Rental Properties would constitute property of the estate.

traditional elements of common law fraud apply to Section 523(a)(2)(A) claims.  Wells Fargo Bank, N.A. v. Farmery (In re Farmery), 2014 WL 2986630, at *1 (Bankr. N.D. Ga. Apr. 11, 2014) (citing Field v. Mans, 516, U.S. 59, 70 n.9 (1995)).  "Thus, to except a debt from discharge under Section 523(a)(2)(A), a creditor must prove: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the plaintiff sustained a loss as a result of the misrepresentation." In re Farmery, 2014 WL 2986630, at *1 (citations omitted).  A claim for actual fraud is broader than a claim for false representation.  FDS Nat'l Bank v. Alam (In the Matter of Alam), 314 B.R. 834, 840 (Bankr. N.D. Ga. 2004).  Actual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent or cheat another…." Id. (citations omitted).

RGDM argues its debt arose from actual fraud because Robertson engaged in a fraudulent transfer scheme with respect to the Transferred Properties.  The Supreme Court recognized that fraudulent conveyance schemes are compatible with the language of section 523(a)(2) in Husky International Electronics, Inc. v. Ritz, 136 S. Ct. 1581, 1584 (2016).  The court was clear, however, that the existence of a fraudulent conveyance scheme in itself is insufficient for a finding of nondischargeability.  Id. at 1589.  Rather, Section 523(a)(2) is only implicated when a plaintiff can prove that the debt in question was "obtained by" the fraudulent conveyance scheme:

> It is of course true that the transferor does not "obtai[n]" debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A). Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that

fraudulent conveyances are not wholly incompatible with the "obtained by" requirement.

Id. (internal citations and quotations omitted).  In Husky, under Texas law, an individual who directed a fraudulent conveyance by a corporation could be held personally liable to a creditor of the transferor through veil piercing and that debt could then be deemed nondischargeable as arising from actual fraud.  In Husky, the debtor's liability to the company's creditor allegedly arose because he directed the company to make fraudulent conveyances with actual intent to hinder, delay or defraud creditors.  That fraud allowed the creditor to pierce the corporate veil and hold the debtor personally liable.  The fraudulent conveyance was what created the personal obligation of Mr. Ritz.  The facts of this case are different:  Robertson already owed the money personally and the alleged fraudulent transfer scheme occurred after the debt was incurred.  See Husky Int'l Electronics, Inc. v. Ritz (In re Ritz), 567 B.R. 715, 762 (Bankr. S.D. Tex. 2017).

RGDM's assertion that its claim is nondischargeable as arising from actual fraud suffers on two primary grounds.  First, RGDM has failed to show how the claim is traceable to the alleged fraudulent transfer scheme.  The undisputed facts show that Robertson's personal debt, originally owed to FirstCity, was created through an agreement to guarantee a loan.  As a result, the debt at issue here existed prior to Robertson's scheme to fraudulently transfer property and is not a debt "obtained by" actual fraud.  Second, if RGDM is instead asserting the claim it acquired arose from fraud, RGDM must demonstrate its ability to bring such a claim, as Georgia law generally does not permit an assignee to bring a claim for fraud on its assignor.  Cadlerock Joint Venture, L.P. v. Pittard (In re Pittard), 358 B.R. 457, 460-61 (Bankr. N.D. Ga. 2006); In re Johnson, 2007 WL 7141849, at *3 (Bankr. N.D. Ga. May 25, 2007) ("The fact that an obligor on a note may be liable to the original holder in fraud as well as in contract, however, does not permit the assignee to enforce the fraud claim under Georgia law.").  The undisputed facts do not

show RGDM is entitled to judgment as a matter of law.  Accordingly, summary judgment is not appropriate for RGDM's Section 523(a)(2)(A) claim for actual fraud.

Robertson also sought summary judgment on RGDM's actual fraud count.  As the party with the burden of proof, the burden is on Plaintiff to respond to the Motion for Summary Judgment by pointing to facts in the record that would justify judgment in its favor.  Plaintiff has not demonstrated a link between the actual fraud alleged and its claim.  Nevertheless, a court has discretion to deny a motion for summary judgment "when it has any doubts as to the wisdom of terminating the action prior to a full trial."  10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure: Civil Section 2728 (3d ed. 1998).  Wagner v. McAnena (In re Vaughan Company), 2014 WL 3889193, *3 (Bankr. D.N.M., August 7, 2014). Since the nature of Plaintiff's claim and the significance of the alleged fraudulent transfers will be taken up at trial anyway, the Court will hear this count at trial and Robertson's Motion for Summary Judgment is denied.

**B. Nondischargeability under Section 523(a)(2)(A) and (B) – Misrepresentations**

RGDM also seeks summary judgment under section 523(a)(2)(A) and (B) for various alleged misrepresentations made by Robertson.  First, RGDM argues that Robertson failed to produce regular financial statements as required under the original contract.  Second, RGDM argues that a personal financial statement submitted by Robertson in 2010 omitted critical information.

Though RGDM does not specify which subparagraph of Section 523(a)(2) applies to Robertson's failure to voluntarily produce financial statements, the Court construes the count to be a claim of misrepresentation under Section 523(a)(2)(A).  Summary judgment for RGDM on such a count is not appropriate.  First, the parties dispute whether the contract in question – the document entitled "Agreement to Provide Financial Information" – required ongoing disclosures.

RGDM argues the language clearly provides for "continuing financial information", while Robertson points out the document only requires disclosures "as reasonably requested" by the original lender, and provides that a default occurs if the documentation is not provided "upon request".    Second, even if the Court assumes the document required Robertson to make continuing financial disclosures without a request from the lender, there is no evidence in the record that she never intended to comply and therefore her failure to do so constitutes a "knowingly and fraudulently made" misrepresentation.    A breach of contract is not a misrepresentation unless the debtor never intended to comply with the contract. <u>Wynn Las Vegas, LLC et al. v. Anandani (In re Anandani)</u>, 2017 WL 4011022, *4 (Bankr. E.D. Pa. September 11, 2017).  Since Plaintiff has the burden of proof and has pointed to no facts in the record substantiating a claim that Robertson had no intention of complying with any requirement of financial disclosure at the time the agreement was signed, summary judgment is appropriate for Robertson on this claim.

The alleged omissions on the personal financial statement fall under section 523(a)(2)(B). Section 523(a)(2)(A) excludes statements "respecting the debtor's...financial condition", whereas Section 523(a)(2)(B) specifically includes written statements respecting the debtor's financial condition.  These sections were intended to be mutually exclusive.  <u>City Fed. Sav. Bank. v. Seaborne (In the Matter of Seaborne)</u>, 106 B.R. 711, 713-14 (Bankr. M.D. Fla. 1989). The effect is that nondischargeability can only be based on a written statement regarding financial condition and not on an oral statement

RGDM contends that a personal financial statement produced by Robertson in 2010 omitted material facts regarding Robertson's financial condition, particularly that she was owed $600,000 from ASG and that she owed her daughter or her daughter's company $537,568.  To prevail on its claim, RGDM must show justifiable reliance on the misrepresentation.  That

reliance must have been by the lender holding the obligation at the time the misrepresentation was made.  Boyajian v. Boyajian (In re Boyajian), 367 B.R. 138 (B.A.P. 9th Cir. 2007) (noting the language "the creditor to whom the debtor is liable" refers to the creditor at the time the statement was made).  The personal financial statement at issue was submitted by Robertson in 2010, when Multibank held the loan.  The affidavit of Stephen Tyde, who is the Director of Loan Workout and Special Servicing, explains that he speaks on behalf of the attorney in fact for Multibank which is the sole member of RGDM.  His testimony is sufficient to create an issue of fact as to justifiable reliance.  His testimony is that the personal financial statement omitted certain transactions.  Because the facts surrounding those transactions are disputed, summary judgment is not appropriate for either party.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that RGDM's Summary Judgment Motion is **DENIED**;

**ORDERED FURTHER** that Robertson's Summary Judgment Motion is **GRANTED** as to

(1)    All allegations related to the Wall Street Property;

(2)    RGDM's allegation that Robertson's discharge should be denied under Section 727(a)(2) because she concealed an interest in Lot 2A, its proceeds or the $537,000 Branch transfer;

(3)    RGDM's allegation that the transfer of $250,000 from Branch to A-1 justifies denial of the Defendant's discharge;

(4)    RGDM's allegation that the scheduling of the United debt was a false oath such that a denial of Defendant's discharge was justified; and

(5)     RGDM's allegations that its debt is nondischargeable due to a failure to provide financial statements;

and **ORDERED FURTHER** that Robertson's Summary Judgment Motion is **DENIED** as to all other grounds.

**END OF DOCUMENT**

**DISTRIBUTION LIST**

Beth E. Rogers
Rogers Law Offices
Suite 1950
100 Peachtree Street
Atlanta, GA 30303

George M. Geeslin
Two Midtown Plaza, Ste. 1350
1349 West Peachtree Street
Atlanta, GA 30309